Thomas REIMANN, Plaintiff,

v.

James P. MURPHY, Robert W. Kent
and Steve Wellens, Defendants.

No. 94–C–0284.

United States District Court,
E.D. Wisconsin.

July 31, 1995.

Thomas Reimann, pro se.

Stephen J. Nicks, Assistant Attorney General, for defendants.

## OPINION AND ORDER

CURRAN, District Judge.

Plaintiff Thomas Reimann, a prisoner currently incarcerated at the Green Bay Correctional Institution initiated a civil rights action pursuant to 42 U.S.C. § 1983 against the Warden, the Security Director and the Mailroom Supervisor of the prison. The Plaintiff claims that his civil rights were violated by the refusal of prison officials to deliver two issues of a newspaper which had been mailed to him and which were published by the "Church of the Creator" (hereinafter referred to as COTC). Prison officials told the Plaintiff that these issues of the paper would not be allowed in the prison because they advocated the taking of human life and advocated violence against non-white races. The Plaintiff further claims that books concerning COTC have been stolen from his cell. The Plaintiff contends that the refusal to deliver these installments of the COTC newspaper violates his right to religious freedom. The Plaintiff also complains about undocumented and unauthorized searches of his cell and alleges that he was subjected to these actions in retaliation for his filing of lawsuits against prison authorities.

The Defendants have filed a motion for summary judgment and a motion for protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. The Plaintiff has filed a brief opposing the summary judgment motion. The Plaintiff has also filed an amended complaint, to which the Defendants have objected because the Plaintiff failed to seek prior leave of the court. The Plaintiff has responded by filing a motion for leave to file his amended complaint. The Plaintiff has also made a request that the court reconsider its earlier denial of his motion for appointment of counsel. The court has considered the various pleadings filed by the parties, including the amended complaint. The Defendants' motions for summary judgment and protective order will be GRANTED. Because the proposed amended complaint adds little to the original complaint and would not survive summary judgment, the motion to amend will be DENIED. The Plaintiff's request that the court reconsider the earlier denial of his motion for appointment of counsel will also be DENIED.

## BACKGROUND

The Plaintiff alleges that in January of 1992 he filed a lawsuit in state circuit court against a prison official, defendant Wellens. Curiously, the Plaintiff's complaint indicates that he also dismissed the lawsuit in January of 1992. The Plaintiff alleges that shortly thereafter, prison officials refused to deliver to him an issue of the newspaper "Racial Loyalty" published by the COTC. The Plaintiff claims that the newspaper is religious in nature, and that he had been receiving the COTC newspaper in prison since 1991. Prison officials told him that the issue of the newspaper which was not delivered to him advocated violence, and therefore was not allowed in the institution. In February of 1993, prison officials again refused to deliver an issue of the newspaper, for essentially the same reason. The Plaintiff alleges that he was not allowed to keep a COTC membership card, even though another inmate was allowed to keep such a card. The Plaintiff alleges that prison officials told him the card could be used to escalate racial tensions at the prison. The Plaintiff does not indicate when this occurred. The Plaintiff claims that defendant Wellens returns periodicals which he rejects without allowing the material to be reviewed by the warden, although he provides no specific examples.

Sometime after the second incident of refusal to deliver the COTC newspaper, the Plaintiff's cell was ransacked by parties unknown, and several books relating to COTC were stolen. The Plaintiff alleges that during this period, a prison official conducted several undocumented and unauthorized searches of his cell. The Plaintiff also has provided to the court affidavits from other inmates stating that they saw a prison official with one of the Plaintiff's stolen books. The inmates' affidavits state that the Plaintiff's books were seen on a table used by prison staff to sort through prisoner property prior to an inmate transfer. The affidavits indicate that an inmate retrieved one of the books from the table and returned it to the Plaintiff. Based on this, the Plaintiff con-

cludes that it was prison officials who ransacked his cell and took his books. The Plaintiff does not specify when the alleged ransacking of his cell and theft of his books occurred. The affidavit of inmate Wade Rolf indicates that these events occurred sometime in or near February of 1993. The Plaintiff also does not say specifically when the unauthorized cell searches occurred. He does not say when prison officials were observed in possession of his books, and does not say which inmate's property was being sorted by prison officials at the time. The Plaintiff claims that the Defendants violated his First Amendment rights in a manner which served no valid penological purpose, and that the Defendants violated the Religious Freedom Restoration Act. The Plaintiff further contends that the Defendants violated state administrative regulations.

## PLAINTIFF'S MOTION FOR LEAVE TO FILE

### AN AMENDED COMPLAINT

██ Plaintiff has filed a motion seeking permission to file an amended complaint. The court has considered the allegations contained in the proposed amended complaint but has concluded that the amended complaint adds very little to the original complaint, and would not affect the outcome of this case. Amending of the complaint would therefore be futile. Although Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend a party's pleading shall be freely given when justice so requires, there is no abuse of discretion in denying a motion to amend pleadings if amendment would be futile. *Morissette v. Peters,* 45 F.3d 1119, 1123 (7th Cir.1995). Accordingly, plaintiff's motion for leave to amend the complaint will be DENIED.

## PLAINTIFF'S REQUEST FOR RECONSIDERATION OF

### MOTION FOR APPOINTMENT OF COUNSEL

██ By order of this court dated November 2, 1994, the Plaintiff's request for appointment of counsel was DENIED without prejudice. The Plaintiff has renewed this request. As stated in the earlier order, in evaluating requests for appointment of counsel in civil cases, the court will consider factors which include the relative merits of the Plaintiff's case, the complexity of the issues involved, and the ability of the Plaintiff to adequately present the case. See *Maclin v. Freake,* 650 F.2d 885, 887–88 (7th Cir. 1981). During this case the Plaintiff has filed several interrogatories, an amended complaint, requests for production of documents, requests for admissions and a brief opposing summary judgment with supporting affidavits and containing citations to case law and statutory law. This is ample demonstration that the Plaintiff is able to adequately present this case. Accordingly, the Plaintiff's motion for reconsideration of his request for appointment of counsel will be DENIED.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Defendants have filed a motion for summary judgment in which they raise alternative arguments claiming that the Religious Freedom Restoration Act was not violated, that it is not to be applied retroactively and that the Act is unconstitutional. The Defendants also assert that they are entitled to qualified immunity. As to the Plaintiff's allegations regarding unauthorized cell searches, the Defendants assert that these allegations are too conclusory to state a valid claim. Finally, the Defendants argue that any claims regarding missing or stolen property are not cognizable in a civil rights action because the Plaintiff has adequate state remedies.

## STANDARD FOR SUMMARY JUDGMENT

██ Under Rule 56(c), summary judgment is proper when the pleadings and other submissions filed in the case show that there is no genuine issue regarding any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After adequate time for discovery, summary judgment is

appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. However, the existence of a factual dispute between the parties will not defeat a properly supported motion for summary judgment unless the facts in dispute are those which might affect the outcome or resolution of issues before the court. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists only where a reasonable finder of fact could make a finding in favor of the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510 (1986); *Santiago v. Lane,* 894 F.2d 218, 221 (7th Cir.1990). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no need for trial and summary judgment is proper. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ The moving party has the initial burden of demonstrating that it is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this burden is met, the non-moving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. The non-movant may not rest on mere allegations or denials in the pleadings.

## ANALYSIS

■ The security and orderly operation of prisons has generally been committed to prison and jail officials, not the federal court. Prison authorities have broad authority in the adoption of policies and practices which they deem necessary to preserve internal order and security. Matters which concern the security and orderly operation of correctional institutions are within the peculiar expertise of corrections officials, and therefore, the courts will generally accord great deference to their expert judgment, unless there is substantial evidence to indicate that deference is inappropriate. See *Bell v. Wolfish,*

441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also *Woods v. O'Leary,* 890 F.2d 883 (7th Cir.1989). The Plaintiff has not provided sufficient evidence to argue against the deference normally accorded to prison officials.

*The Religious Freedom Claim*

■ The Plaintiff claims that the refusal to deliver certain issues of the COTC newspaper violated his religious freedom and his right to practice his religion. The Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb–1(a) and (b), provides that the government shall not substantially burden a person's exercise of religion unless the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. *Cheffer v. Reno,* 55 F.3d 1517, 1522 (11th Cir.1995). The Plaintiff must therefore show that the failure to deliver particular issues of the COTC newspaper poses a substantial burden to the practice of his religion. The Plaintiff has failed to produce any facts from which it might be inferred that the possession of particular issues of the COTC newspaper "Racial Loyalty" is a required or important part of his religion or that he would be unable to practice his religion without these particular copies of the newspaper. He has produced no evidence to indicate that the practice of his religion is detrimentally affected by the loss of these two editions of the newspaper. Accordingly, there has been no showing that the failure to deliver the newspapers in question constitutes a substantial burden to the practice of the his religion.

■ Even if, however, the evidence proffered by the Plaintiff was sufficient to support an inference that the confiscation of the two issues of the newspaper constituted a substantial burden to the Plaintiff's exercise of his religion, the Defendants have provided irrefutable evidence that the confiscation was the least restrictive means of furthering a compelling governmental interest. The issues of "Racial Loyalty" are so replete with racial hatred and language inciting violence that there is no way they could be redacted and leave anything more than sentence frag-

ments. The state has a compelling interest in quelling violence in prisons and, as I have stated, the suppression of these periodicals furthers this interest. The periodicals refer frequently to "Rahowa" an acronym for racial holy war. Because the court finds that there is no genuine issue of material fact which would preclude granting the Defendants' judgment as a matter of law on the RFRA claim, I need not address the issues concerning retroactivity, constitutionality and qualified immunity. I note, however, that courts considering the retroactivity of the RFRA have overwhelming found that it is to be applied retroactively. *See* 42 U.S.C. § 2000bb–3(a) ("This chapter applies to all federal and state law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993.") *Werner v. McCotter,* 49 F.3d 1476 (10th Cir.1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 2625, 132 L.Ed.2d 866 (1995); *Brown–El v. Harris.* 26 F.3d 68 (8th Cir.1994); *Woods v. Evatt,* 876 F.Supp. 756 (DSC 1995); *Allah v. Menei,* 844 F.Supp. 1056 (E.D.Pa.1994); and *Lawson v. Dugger,* 844 F.Supp. 1538 (S.D.Fla.1994). The court further notes that a district court in the Western District of Wisconsin has recently held that the Act is constitutional. *See Sasnett v. Department of Corrections,* 891 F.Supp. 1305 (W.D.Wis.1995). *But see Canedy v. Boardman,* 16 F.3d 183, 186 n. 2 (7th Cir.1994) (suggesting that the constitutionality of the legislation "raises a number of questions involving the extent of Congress' powers under Section 5 of the Fourteenth Amendment.")

The Retaliation Claim

 The Plaintiff does not provide a chronology of events which suggests retaliation. In both his original complaint and his amended complaint, the Plaintiff alleges that he filed a lawsuit in state circuit court against defendant Wellens in January of 1992. The Plaintiff's original complaint indicates that the Plaintiff also dismissed that lawsuit in January of 1992. The Plaintiff says that shortly thereafter, the Defendants refused to deliver an issue of the COTC newspaper, but he fails to provide the date on which this occurred. The court notes that

records submitted by the Defendants indicate that the Plaintiff complained to them about nondelivery of COTC literature in August of 1992, some seven months after the lawsuit against defendant Wellens was dismissed. The Plaintiff alleges a second instance of non-delivery in February of 1994, more than two years after the alleged date of the circuit court lawsuit against defendant Wellens. The Plaintiff has therefore failed to show any reasonable chronological link between the lawsuit he filed against defendant Wellens and the decision by officials to confiscate certain issues of the COTC newspaper.

The Plaintiff has failed to establish the date upon which the alleged ransacking of the his cell occurred and his books were taken. Affidavits of other inmates indicate that this occurred during February of 1993, more than a year after the alleged circuit court lawsuit against defendant Wellens. Therefore, the occurrences of non-delivery, the ransacking of the Plaintiff's cell and the theft of his books all appear to be too far removed in time from the filing of the Plaintiff's circuit court lawsuit to reasonably suggest retaliation by defendant Wellens.

 As to the alleged unauthorized cell searches, the affidavits and allegations of the Plaintiff indicate that both he and other inmates were subjected to the undocumented searches. (See for example the affidavits of Gerald Morgan, Daniel Lee, Chris McDonald, Ronald Keith, Jeff Williams, Brian Moeller and Arlo Tratz). The Plaintiff does not identify the other inmates who were subjected to these searches. There is no factual indication that only inmates with pending lawsuits were subjected to the searches. There is likewise no factual indication that the Plaintiff was singled out for unauthorized searches because of his suits against prison officials. Moreover, prison officials may search an inmate's cell for any reason. See *Soldal v. Cook County, Illinois,* —— U.S. ——, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992); *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Searches of an inmate's cell do not violate the inmate's civil rights, even when the inmate alleges a retaliatory motive for the search. *Hanrahan v.*

*Lane,* 747 F.2d 1137 (7th Cir.1984). The Plaintiff has provided nothing to show that inmates have any constitutional or federally-protected right to be free from unauthorized or undocumented cell searches, and he has cited no state statute which creates such a liberty interest. See *Block v. Rutherford,* 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984). The state's adoption of regulatory guidelines for such searches is a matter of state law, and does not by itself create a federally protected liberty interest.

■ The Plaintiff has also filed a series of affidavits from himself and other inmates in an apparent attempt to allege a pattern of ongoing retaliation by prison officials. For example, the Plaintiff appears to claim that the retaliatory motive of prison officials was demonstrated by their refusal to allow him to keep a COTC membership card, while allowing another inmate to keep one of the cards. However, this denial by defendant Wellens apparently occurred in May of 1992, some four months after the Plaintiff's circuit court lawsuit against Wellens had been filed and dismissed. The Plaintiff has therefore failed to show a sufficient nexus between this occurrence and his lawsuits. Additionally, failure to treat all inmates equally is not a constitutional violation unless the differing treatment is based on some suspect classification such as race.

As another alleged example of a pattern of retaliation, the Plaintiff claims that "Tattoo Magazine" was previously allowed at the prison, but was deemed contraband and not delivered only after he sued the prison warden. He provides neither the date of the lawsuit nor the date when the magazine was deemed contraband. The Plaintiff gives no information on the content of the magazine, and does not say whether other inmates are allowed to receive it.

■ The Plaintiff claims the retaliatory loss of two prison jobs, removal from a college program, damage to his property, transfer to a different cell, improper conduct reports, and the upgrading of a minor conduct report to a major conduct report without explanation, but he provides neither dates nor factual details. Despite the Plaintiff's claims of an "unabated" and "unrelenting

pattern of harassment", these allegations appear to indicate that during the Plaintiff's stay at the Green Bay Correctional Institution, he was given at least two prison jobs, allowed to participate for a time in a college program, had at least one conduct report dismissed, and received affirmance of at least one inmate complaint, all presumably occurring under the supervision of the same prison officials he alleges were subjecting him to "unrelenting harassment". Viewed in such a context, and without dates and factual details, the Plaintiff cannot credibly establish a close connection between his lawsuits and the deprivations about which he complains. Moreover, there is in no case any indication that the actions would not have been taken absent a retaliatory purpose.

■ Retaliation claims, like all claims, must be proven. To survive summary judgment, the Plaintiff must present evidence from which a reasonable fact-finder might conclude that the motive of the Defendants was retaliation for his filing of lawsuits. Opinions, feelings, and suppositions are not by themselves sufficient. Additionally, the Plaintiff must provide evidence suggesting that the actions would not have occurred absent a retaliatory motive. See *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The Plaintiff has not met these requirements. As pointed out above, there is no allegation in either the original or amended complaint that COTC newspapers which do not explicitly advocate violence are excluded by prison officials. The Plaintiff claims that Muslim publications which espouse racism are allowed in the prison, but he has failed to produce any example showing that these publications also contain the explicit call to racial violence which led prison officials to exclude two issues of the COTC newspaper. The allegations of a pattern of retaliatory conduct contain too little factual detail to support an inference of a retaliatory motive on the part of prison officials. The Plaintiff has failed to provide any indication that he would be able to produce at trial any evidence from which an inference could be drawn that the Defendants were retaliating against him. He has alleged no proposed

discovery which might yield such information, and the court will not infer an improper motive without some fact to support that inference.

Undocumented Searches, Lost Or Stolen Property And Violation Of State Regulations

■ The Plaintiff claims that the Defendants subjected him to unauthorized searches, were responsible for the loss or theft of his property and violated state regulations. Most of these allegations seem intended only to buttress his religion and retaliation claims, as indicated above. To the extent that they are not so intended, the Plaintiff has failed to establish that he has no adequate state remedy for any property missing as a result of the Defendant's actions. See *Stewart v. McGinnis*, 5 F.3d 1031 (7th Cir.1993). Prison officials may search an inmate's cell for any reason. The state's adoption of regulatory guidelines for such searches does not create a federally protected liberty interest. 42 U.S.C. § 1983 provides redress for violations of federal law and federally protected liberty interests, not violations of state procedures. See *Tavarez v. O'Malley*, 826 F.2d 671 (7th Cir.1987). Absent an allegation that the state has failed to provide an adequate remedy or means of review, claims regarding theft, loss of property and undocumented cell searches would appear to involve state law alone, and the Plaintiff presents no reason why he cannot pursue these claims in an appropriate state forum. Accordingly, the Defendants are entitled to summary judgment on this issue.

### CONCLUSION

The Plaintiff has failed to establish that there are any genuine issues of fact requiring a trial. The Plaintiff has failed to produce any evidence indicating that the Defendants violated his right to practice his religion or his right to be free from retaliation for exercising his civil rights. Because the record taken as a whole could not lead a rational trier of fact to find for the Plaintiff, the court concludes that there is no need for trial and summary judgment is proper. *Matsushita*, 475 U.S. at 574, 587, 106 S.Ct. at 1348, 1356 (1986).

### DEFENDANTS' MOTION FOR PROTECTIVE ORDER

The Defendants filed a motion for protective order seeking to stay further discovery until disposition of their summary judgment motion. The motion for protective order was filed before the Plaintiff had completed discovery, and the Defendants have not answered those discovery requests which were filed after this motion. The Defendants contend that the Plaintiff's discovery requests are unreasonable and unduly burdensome. The Defendants further contend that they are entitled to qualified immunity, that qualified immunity is an immunity not only from damages but from suit as well, and that they therefore should not be required to comply further with the Plaintiff's discovery requests. The Plaintiff has not responded directly to this motion, but in his brief opposing summary judgment the Plaintiff contends, pursuant to Rule 56(f), Federal Rules Of Civil Procedure, that judgment should not be granted to the Defendants because they have not allowed him to complete discovery.

■ Rule 56(f) of the Federal Rules of Civil Procedure allows a court to refuse a motion for summary judgment, or order a continuance, when the party opposing the judgment is unable for valid reasons to present facts to justify opposition to the motion. Vague assertions that further discovery might develop genuine issues of material fact are not sufficient for purposes of Rule 56(f). See *Colby v. J.C. Penney Co.*, 926 F.2d 645, 648 (7th Cir.1991); *United States v. Bob Stofer Oldsmobile–Cadillac, Inc.*, 766 F.2d 1147, 1153 (7th Cir.1985). The party opposing summary judgment must show that the evidence he seeks actually exists or is likely to exist, and that party cannot rely on mere speculation. See *United States v. On Leong Chinese Merchants Assoc. Bldg.*, 918 F.2d 1289, 1295 (7th Cir.1990), *cert. denied*, 502 U.S. 809, 112 S.Ct. 52, 116 L.Ed.2d 29 (1991).

Because the court concludes that the Defendants are entitled to summary judgment on the merits, and the court need not reach the issue of whether the Defendants are entitled to qualified immunity. The Plaintiff has made no showing that the failure to deliver

406

the newspapers in question constitutes a substantial burden to the practice of his religion. There is nothing to indicate that the Defendants would be better able than the Plaintiff to provide information on this issue. There is nothing to indicate that further discovery from the Defendants is likely to produce any such information. It is evident from the information already available that prison officials concluded that excluding materials which explicitly advocate racial violence furthers the compelling governmental interests of preventing racial unrest and maintaining the order and security of the prison. The Plaintiff has not asserted any reasonable alternative which is less restrictive than the Defendants practice of reviewing editions of the COTC newspaper individually and excluding those editions of the newspaper which explicitly advocate violence. There is nothing to indicate that further discovery on these issues is necessary. As to the Plaintiff's claims of retaliation, even if the Plaintiff were able to obtain information showing that retaliation was a motivating factor in the exclusion of the newspapers, he would still have to produce evidence to indicate that the newspapers would have been allowed absent a retaliatory motive. He has not done so, and has not proposed any additional discovery which might lead to such evidence.

The disposition of this case rests on information which was available to both parties. There is no proposed discovery which might produce information which would be dispositive or might change the outcome of this case. Allowing further discovery would not, therefore, serve any useful purpose. Accordingly, the Defendants' motion for protective order will be GRANTED.

### ORDER

**IT IS THEREFORE ORDERED** that the Defendants' motion for a protective order IS GRANTED.

**IT IS FURTHER ORDERED** that the Plaintiff's motion to amend the complaint and the Plaintiff's request for reconsideration of the denial of his motion for appointment of counsel be and hereby are DENIED.

**IT IS FURTHER ORDERED** that the Defendants' motion for summary judgment

IS GRANTED. The clerk is directed to enter final judgment in favor of the Defendants and against the Plaintiff who takes nothing.

Done and Ordered.