**In re Roceliua D. MURPHY, Debtor.**

**Roceliua D. Murphy, Plaintiff,**

v.

**Educational Credit Management Corporation, Defendant.**

**Bankruptcy No. 91–07838–TOM–13. Adversary No. 99–00086.**

United States Bankruptcy Court, N.D. Alabama, Southern Division.

Nov. 8, 2000.

Dennis G. Pantazis, Birmingham, AL, for Plaintiff.

Edward McF. Johnson, Birmingham, AL, for Plaintiff.

Jerry O. Lorant, Homewood, AL, for Plaintiff.

W. McCollum Halcomb, Birmingham, AL, for ECMC.

Ellen Kornblum, Beverly Hills, CA, for AFSA.

David P. Rogers, Birmingham, AL, Standing Chapter 13 Trustee.

## *MEMORANDUM OPINION*

TAMARA O. MITCHELL, Chief Judge.

This matter comes before the Court to determine dischargeability of a debt after an Order was entered bifurcat-

ing the adversary proceeding. (A.P. Proceeding No. 12). A joint stipulation of facts was submitted by the plaintiff Roceliua D. Murphy (hereinafter "Plaintiff" or "Debtor") and defendants Educational Credit Management Corporation (hereinafter "ECMC") and Academic Financial Services Association Data Corporation (hereinafter "AFSA"). The parties then submitted briefs on the dischargeability issue. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a)(1994) and the district court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a core proceeding as set out in 28 U.S.C. § 157(b)(2)(I).[2] The Court must decide whether Debtor's discharge from her Chapter 13 case included a discharge from all postpetition student loan interest which accrued during the pendency of her case. This Court has considered the pleadings, briefs and the law, and finds and concludes as follows.[3]

## I. FINDINGS OF FACT[4]

From May of 1985 through September of 1986, Plaintiff received three separate student loan disbursements guaranteed by the U.S. Department of Education.[5] Citibank N.A. was the holder of these loans. On October 11, 1991, the Plaintiff filed a voluntary Chapter 13 petition and her proposed plan was confirmed without objection on February 14, 1992.

Citibank requested reimbursement under the loan guaranty and the loans were transferred and assigned to the Higher Education Assistance Foundation (hereinafter "HEAF"). Plaintiff's bankruptcy case file indicates that a claim was filed on behalf of HEAF for $3,944.44 on November 19, 1991. Thereafter, HEAF ceased operations. The claim and loans were then transferred and assigned to the United States Department of Education. The Department of Education then assigned the loans to ECMC.[6]

Although the Debtor's case was dismissed on October 2, 1996, the dismissal order was later set aside by the Court upon Debtor's request. Debtor/Plaintiff was then able to make all her payments to the Chapter 13 Trustee and received a discharge from all debts provided for under the plan. The standard discharge order was entered on August 28, 1997 which prohibited all creditors from attempting to collect any debt discharged in the bankruptcy case. (B.K. Proceeding No. 20). It is undisputed that the principal of the student loan debt and all prepetition interest were paid in the case. The dispute concerns postpetition interest that may have accrued on the declining principal balance during the pendency of the case.

1. The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides: The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

2. 28 U.S.C. § 157(b)(2)(I) provides:

(b)(2) Core proceedings include, but are not limited to—
(I) determinations as to the dischargeability of particular debts.

3. This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy

pursuant to Federal Rule of Bankruptcy Procedure 7052.

4. Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of the contents of its own files. See ITT Rayonier, Inc. v. U.S., 651 F.2d 343 (5th Cir. Unit B July 1981); Florida v. Charley Toppino & Sons, Inc., 514 F.2d 700, 704 (5th Cir.1975).

5. Most of the facts are taken from the Parties' Stipulated Statement of Facts. (A.P. Proceeding No. 23). Any additional facts are noted with their source.

6. ECMC is a non-profit Minnesota corporation created at the request of the Department of Education under the Federal Family Education Loan Program for the purpose of collecting student loan debts.

On March 9, 1998, ECMC sent a letter to the Plaintiff declaring that her student loan was near default and that she should contact ECMC or AFSA to resolve the problem. On March 30, 1998, Plaintiff's counsel [7] wrote AFSA advising that he represented the Plaintiff and that she had paid off her student loans under the plan. He further advised AFSA that their collection attempts were in violation of the Bankruptcy Court's Discharge Order and that he would seek relief from the Court if there were any further attempts at collection. On September 14, 1998, ECMC sent Plaintiff's employer, Caraway Methodist Hospital, a Withholding Order claiming it was entitled to the sum of $2,575.65 and directing the employer to deduct a portion of her check and send payments to ECMC until the amount was paid in full.

On January 11, 1999, Ms. Murphy filed suit in the Circuit Court of Jefferson County, Alabama alleging that defendants ECMC and AFSA had wrongfully garnished and converted her wages.[8] She also alleged extortion and invasion of privacy based upon a series of phone calls from the defendants in their attempts to collect the monies allegedly owed. Pursuant to 28 U.S.C. § 1452(a) [9], ECMC removed this case to the United States Bankruptcy Court for the Northern District of Alabama on March 3, 1999. ECMC simultaneously requested that the Plaintiff's bankruptcy case be reopened. (B.K. Proceeding No. 23). The case was reopened on March 11, 1999. (B.K. Proceeding No. 24). On March 12, 1999, Plaintiff filed a Motion to Remand this Adversary Proceeding to the Circuit Court of Jefferson County, Alabama.

Based upon an agreement by the parties, this Court entered an Order bifurcating this proceeding for the purpose of first determining the dischargeability of the postpetition interest and then any remaining causes of action would be remanded to the Circuit Court of Jefferson County, Alabama. (A.P. Proceeding No. 12).

There being no dispute as to the facts of this proceeding, the parties submitted briefs in support of their respective positions under the law.

## II. CONCLUSIONS OF LAW

### A. Nondischargeability

■ It is undisputed that student loans are nondischargeable. 11 U.S.C. § 523(a)(8).[10] However, the Bankruptcy Code does not explicitly address the dischargeability of postpetition interest on student loans. The Plaintiff is correct in its assertion that this Court has not yet addressed this issue. However, with one exception [11], every opinion reviewed by this Court has held that postpetition interest

---

7. Robert D. Reese wrote this letter and served as Plaintiff's counsel during her bankruptcy case.

8. The case number of the state court suit was CV–99–0157.

9. 28 U.S.C. § 1452(a) provides:
 (a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police power or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

10. 11 U.S.C. § 523(a)(8) provides:
 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
 (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

11. See In re Wasson, 152 B.R. 639 (Bankr. D.N.M.1993).

on student loans is nondischargeable.[12] This Court now joins in that majority view.

The seminal case on postpetition interest for a nondischargeable debt is *Bruning v. United States*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964). In *Bruning*, the Court held that a nondischargeable tax debt continued to accrue interest during the pendency of the case. *Id.* The Court also held the postpetition interest to be nondischargeable and collectible against the debtor personally after the conclusion of the bankruptcy case. *Id.* at 363, 84 S.Ct. 906. Although *Bruning* was a pre-Code case, the Eleventh Circuit has explicitly held that the law of *Bruning* survived the enactment of the Bankruptcy Code and that postpetition interest on a nondischargeable debt is itself nondischargeable. *Burns v. United States (In re Burns)*, 887 F.2d 1541, 1543 (11th Cir.1989).[13]

 The sole case to hold that postpetition interest is discharged along with the nondischargeable student loan debt is *In re Wasson*, 152 B.R. 639 (Bankr.D.N.M. 1993). The court in *Wasson* held that if the underlying student loan and all prepetition interest were paid in full through the plan, the postpetition interest would be discharged along with the underlying debt. *Id.* at 643. *Wasson* has been universally criticized as confusing " 'the disallowance of unmatured interest with the non-accrual of interest.' " *Leeper v. Pennsylvania Higher Education Assistance Agency*, 49 F.3d 98 (3rd Cir.1995) (quoting *Shelbayah*, 165 B.R. at 337). A creditor may not file a claim for unmatured interest and a claim including such interest would be disallowed upon objection. 11 U.S.C. § 502(b)(2). *See also Shelbayah*, 165 B.R. at 337. ECMC was therefore limited to the repayment of its principal debt and prepetition interest while the Plaintiff's bankruptcy case was pending. *See Bell*, 236 B.R. at

429. However, interest on the declining balance of the debt continued to accrue at the contract rate during the pendency of the case. *See In re Sullivan*, 195 B.R. 649, 652 (Bankr.W.D.Tex.1996).

While ECMC was prohibited from collecting the postpetition interest from the estate and the Plaintiff was under no obligation to pay the interest to ECMC during the pendency of the case, nothing prevented ECMC from seeking to collect from Plaintiff once she was discharged. *See id.* Plaintiff's discharge covered only those debts which are dischargeable. The Discharge Order entered by this Court explicitly provided that student loan debts under § 523(a)(8) were not discharged. The fact that Plaintiff paid the entire claim during the case does not control the outcome of this issue. Plaintiff paid the entire principal and prepetition interest claim—but she did not and could not have paid the entire debt in the case. Had ECMC attempted to include postpetition interest in its claim it would have been in violation of § 502 and subject to disallowance. Thus, the postpetition debt did not vanish even though the bankruptcy claim was paid and a discharge entered. The remaining debt was not discharged. "That debt, which pursuant to *Bruning* includes postpetition interest, was not discharged upon the completion of the debtor's plan." *Wagner*, 200 B.R. at 165. Thus, ECMC is free to pursue collection of its nondischargeable postpetition interest.

### B. Policy behind Nondischargeability

 Congress' main purpose in enacting the Bankruptcy Code was to ensure the insolvent debtor a fresh start by discharging his prepetition debts. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654,

---

12. *See, e.g., Leeper v. PHEAA,* 49 F.3d 98 (3rd Cir.1995); *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee),* 218 B.R. 916 (9th Cir. BAP 1998), *aff'd* 193 F.3d 1083 (9th Cir. 1999); *Bell v. Educ. Credit Mgmt. Corp. (In re Bell),* 236 B.R. 426 (N.D.Ala.1999).

13. *Burns* adopted the analysis of *Hanna v. United States (In re Hanna),* 872 F.2d 829 (8th Cir.1989).

112 L.Ed.2d 755 (1991) (citing *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). In furtherance of Congress' fresh start policy, the Eleventh Circuit has generally construed exceptions to discharge narrowly. *See Equitable Bank v. Miller (In re Miller),* 39 F.3d 301, 304 (11th Cir.1994). However, 11 U.S.C. § 523(a)(8) specifically provides that only in certain circumstances will education loans extended by or with the aid of a governmental unit or nonprofit institution solely on the basis of the student's future earnings potential be discharged in bankruptcy.[14] Several reasons have been cited to explain why Congress excepted student loans from a discharge in bankruptcy. One source claims that it was in response to "the perceived need to rescue the student loan program from insolvency, and to also prevent abuse of the bankruptcy system by students who finance their higher education through the use of government backed loans, but then file bankruptcy petitions immediately upon graduation even though they may have or will soon obtain well-paying jobs, have few other debts, and have no real extenuating circumstances to justify discharging their educational debt." *Green v. Sallie Mae (In re Green),* 238 B.R. 727, 732–733 (Bankr.N.D.Ohio 1999) (citing the *Report of the Commission on the Bankruptcy Laws of the United States,* H.R. DOC. NO. 93–137, 93d Cong., 1st Sess., Pt. II 140, n. 14). Another source claims that Congress enacted 11 U.S.C.

§ 523(a)(8) to ensure that these kinds of loans could not be discharged by recent graduates who would then pocket all future benefits derived from their education. *See Andrews University v. Merchant (In re Merchant),* 958 F.2d 738 (6th Cir.1992) (citing H.R. REP. NO. 95–595, 95th Cong., 1st Sess. 466–75 reprinted in 1978 U.S.C.C.A.N. 5787). These same policy concerns which persuaded Congress to declare student loans nondischargeable also dictate that postpetition interest on these loans survive bankruptcy.[15]

### III. CONCLUSION

The great weight of the case law regarding the postpetition interest on nondischargeable student loan debts makes it clear that this interest is itself nondischargeable. Once Plaintiff was discharged from her Chapter 13 case, the defendants were free to pursue collection from her personally. Consistent with its order of May 20, 1999, this Court also directs that any remaining causes of action are remanded to the state court from which this action arose. Accordingly, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that the balance of the debt owed to ECMC which is postpetition interest on a student loan is hereby determined to be **NONDISCHARGEABLE.** The Clerk's office is directed to return the original action from the Circuit Court of Jefferson

---

**14.** *See supra* note 10.

**15.** However, notwithstanding these policy concerns, Congress also realized that not all student debtors abuse the bankruptcy system, and that some student debtors are in true need of bankruptcy relief. Thus, Congress determined that an absolute bar to the dischargeability of student loan debts would be too harsh, and also unnecessary to effectuate the foregoing policy goals. Consequently, unlike other types of debt, such as alimony and child support for which a debtor cannot receive a bankruptcy discharge, Congress permitted student loan debts to be discharged if the debtor could demonstrate extenuating circumstances. Specifically, Congress provided that a debtor who finances his or her higher education may seek to receive a bankruptcy discharge on an educational loan if the debtor can demonstrate that excepting the debt from discharge would impose an "undue hardship" on the debtor and the debtor's dependents. This issue is governed by 11 U.S.C. § 523(a)(8). To obtain a determination that a student loan (and/or the postpetition interest thereon) should be discharged pursuant to § 1328, a debtor must file an adversary proceeding and prove the requirements pursuant to 11 U.S.C. § 523(a)(8). FED. R. BANKR. P. 7001(6). *See Morris v. United States (In re Morris),* AP No. 00–00015–TOM–7 (Bankr. N.D.Ala. April 4, 2000)(Mitchell, C.J.), *McCormick v. ECMC (In re McCormick),* A.P. No. 99–00035–TOM–7 (Bankr.N.D.Ala. Jan. 3, 2000)(Mitchell, C.J.).

County, Alabama to said court after the expiration of the time for appeal.